No. 24-1238

# United States Court of Appeals for the Fourth Circuit

RANDALL WILLIAMS, PERSONAL REPRESENTATIVE OF THE ESTATES OF
SHANICE R. DANZTLER-WILLIAMS AND MIRANDA R. DANTZLER-WILLIAMS,

AND

BETTY SIMMONS, PERSONAL REPRESENTATIVE OF THE ESTATE OF
STEPHANIE DANTZLER,

*PLAINTIFFS − APPELLANTS*

V.

CHARLESTON COUNTY SHERIFF'S OFFICE,

*DEFENDANT − APPELLEE*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
NO. 2:23-CV-02149-DCN (HON. DAVID C. NORTON)

## APPELLANTS' MOTION FOR JUDICIAL NOTICE AND TO SUPPLEMENT APPENDIX

Richard A. Hricik, Esq.
THE LAW OFFICES OF
RICHARD A. HRICIK, PA
941 Houston Northcutt Blvd. Suite 204
Mt. Pleasant, SC 29464
Richard@CharlestonLawyer.com
P: (843) 849-0136
*Counsel for Appellant*
*Randall Williams, PR of the Estates*
*of Shanice & Miranda Williams*

## I.    <u>SUMMARY – JUDICIAL NOTICE</u>

Pursuant to Federal Rule of Evidence 201(c)(2), Appellants seek judicial notice of publicly available government financial facts (set forth, *infra,* Sec. IIIA, Facts #1-#8) by and about two governmental bodies: Charleston County and the State of South Carolina Insurance Reserve Fund ("IRF"). These public financial and operational facts are stated in the audited financial reports of the public bodies themselves and were all obtained from public government websites.[1]

As such, these governmental financial facts (and documents) are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Appellants also seek to add the documents as a Supplemental Appendix to the Joint Appendix when filed so that the Court will have complete and correct information as it relates to the Eleventh Amendment immunity defense asserted by Appellee that is the subject of the appeal.

---

[1] See Exhibit A – Declaration of Richard A. Hricik (hereinafter "Hricik Declaration") and Exhibits A-1 to A-5. SA 1-430.

## II.    <u>INTRODUCTION</u>

'The most important consideration in Eleventh Amendment immunity jurisprudence is whether the state treasury will be responsible for paying any judgment.' *Ram Ditta v. Maryland Nat'l Capital Park Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987).

Appellant's appeal, as certified, is as to one very narrow issue of first impression for this Court to decide: <u>When there is no risk to the State of South Carolina Treasury</u>, ("State Treasury Risk") are County Sheriffs and their County Offices in South Carolina entitled to Eleventh Amendment immunity for 42 U.S.C. § 1983 *Monell* claims? (emphasis added).

**<u>The sole purpose of Appellants' Motion For Judicial Notice is to aid the Court by providing objective proof, that is properly the subject of judicial notice, to establish, for the first time, the absence of State of South Carolina Treasury Risk for 42 U.S.C. § 1983 *Monell* claims made against County Sheriffs and their Offices in South Carolina</u>**.[2] (emphasis added).

---

[2] Facts #1-#8 and SA 1-430 establish that the absence of "State Treasury Risk" as to Appellants' claims – and conversely establish that there is only 'County Treasury Risk'.

*N.B.* This absence of State Treasury Risk is not only an objective fact, but is also pursuant to the codified law of South Carolina that controls and dictates the operations of the IRF and the County. See *infra*, Sec III.D.

By taking judicial notice of these public governmental financial facts, pursuant to the codified law related to same, this Court can properly assess Appellee's claim of Eleventh Amendment immunity knowing there is no State Treasury Risk – the most critical consideration of Eleventh Amendment immunity analysis – and instead, focus its attention and analysis on the remaining considerations of *Ram Ditta*, *supra*.

**A. Background – Uncertainty of South Carolina State Treasury Risk In Prior 4th Circuit Decisions as to County Sheriffs and Eleventh Amendment Immunity Claims.**

Despite the critical importance of the absence of State Treasury Risk to Eleventh Amendment immunity analysis, this Court has never been presented with a clear answer as to this crucial financial consideration as to immunity claims made by a County Sheriff or a County Sheriff's Office in South Carolina; especially where the County elected to insure its County Sheriff via the IRF. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. S.C. 1996):

> Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund [("IRF")]. <u>However, we are unable to discern from the record in this case whether the state pays any premiums on behalf of Greenville County. …Thus, it is unclear whether the state treasury would be partially liable for a judgment in this case.</u>

*Cromer*, 88 F.3d. at 1332. (emphasis added).

For comparison, *see Harter v. Vernon* 101 F.3d 334, 340 (1996), wherein this Court held that County Sheriffs' Offices and County Sheriffs in North Carolina are

not entitled to Eleventh Amendment immunity due to the absence of State Treasury

Risk stating:

> It is undisputed that North Carolina does not have to satisfy judgments against [County] sheriffs. Because the "state treasury will not be affected" by any such judgment, we examine the remaining *Ram Ditta* factors, keeping in mind that the most important consideration weighs against immunity. (emphasis added) *Id.* at 340.

The *Harter* court expressly noted the absence of State Treasury Risk was not

only critical to its decision, but was also an unknown fact to the *Cromer* court that

affected that court's decision:

> "Finally, and most significantly, while in *Cromer* we could not discern whether the South Carolina treasury would pay for some, or all, of a resulting judgment, in this case it is undisputed that the North Carolina treasury will not pay any judgment.

*Harter*, at 341, n 2. (emphasis added).

Additionally, the District Court, in its Fed. R. Civ. P. 54(b) certification

decision, recognized that the question of the absence of State Treasury Risk, as to

claims of Eleventh Amendment immunity against County Sheriffs and their Offices

in South Carolina, has never been made clear to any Court. *See* ECF No. 53 at

pp.15-6 n.9. See also, *English v. Clarke*, 90 F.4th 636, 649-50 (4th Cir. 2024),

wherein this Court stated Eleventh Amendment immunity as to a self-insured

Sheriff's office in South Carolina was a "question for another day."

The facts and documents that are the subject of this Motion for Judicial

Notice will give this Court the same freedom enjoyed by the *Harter* court –

freedom to analyze Appellee's claim of Eleventh Amendment immunity with a complete and accurate record that conclusively establish that the State Treasury of South Carolina faces no financial liability for Appellants' 42 U.S.C. § 1983 *Monell* claims. See Exhibit A – Hricik Declaration and SA 1-430.

## III.    <u>MOTION FOR JUDICIAL NOTICE</u>

Pursuant to Federal Rule of Evidence 201(c)(2), Appellant seeks judicial notice of the following numbered Facts 1-8, set forth below, and the related publicly available government financial records of the government bodies themselves, obtained from their government websites, as is set forth in Exhibit A SA 1-430, that all collectively establish Fact #8: There is no State Treasury Risk (only County Treasury Risk) as to 42 U.S.C. § 1983 *Monell* claims, such as Appellants' claims.[4]

1. By law, every County in South Carolina has 3 options to insure their County Departments, including their County Sheriff's Department: (1) buy insurance from any source, including the IRF; (2) self-insure; or (3) enter into a pooled arrangement with another County. See S.C. Code Sec. Ann. § 15-78-140.

---

[4] While Appellants enjoy the legal presumption of the truth of all matters set forth in their Amended Complaint, and incorporated documents, per the Fed. R. Civ. P. 12(b)(6) standard, See e.g. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting all factual allegations in the Complaint as true) Appellants seek judicial notice of these facts <u>so that Court may base its immunity decision on not just what is presumptively true – but what is objectively true</u>: there is no State of South Carolina Treasury Risk for Appellants' claims. (emphasis added).

2. The County of Charleston insures and indemnifies Appellee CCSO from its County treasury; the same as it does for every other Charleston County Department. Exhibit A; Attachments A-1; A-2. SA 1-304

3. Charleston County purchased a County Tort Liability Policy and County Automobile Liability Policy from the Insurance Reserve Fund ("IRF") that provides coverage to the County and all of its Departments, including the Charleston County Sheriff's Office, its Sheriff, and Deputies for Appellants' claims. Exhibit A; Attachments A-1; A-2. SA 1-304.

4. State law requires that premiums paid to the IRF can only be paid by the insured, and as such, the State of South Carolina does not and did not pay any portion of the liability insurance premiums paid by Charleston County to the IRF to insure Appellee. Exhibit A; Attachments A-1; A-2. SA 1-304. S.C. Code Ann. §1-11-140(A), § 15-78-150

5. The IRF does not receive any appropriations from the State of South Carolina General Fund and pays claims only from accumulated premiums, earnings on investments, and through the use of reinsurance. Exhibit A; Attachments A-3; A-4; A-5. SA 305-430.

6. The IRF is a self-insurer and is funded entirely by (1) premiums paid by its insureds and (2) investment returns on its investments. Exhibit A; Attachments A-3; A-4; A-5. SA 305-430.

7. The IRF purchased reinsurance from American Southern, a publicly traded company, who has assumed 100% of the risk from the IRF for the County Automobile Policy purchased by Charleston County for CCSO. Exhibit A; Attachments A-1; A-2; A-5. SA 1-304; 372-430.

8. The Treasury of the State of South Carolina is not at risk from any 42 U.S.C. § 1983 *Monell* claims brought against any County Sheriff and/or County Sheriff's Office in South Carolina - even when a County selects the Insurance Reserve Fund as their insurer. Exhibit A; Attachments A-1 to A-5. SA 1- 430; S.C. Code Sec. Ann. § 15-78-140; §1-11-140(A); and § 15-78-150

Per Fed. R. Evid. 201(d), judicial notice may be taken at any stage of the proceeding, including by an appellate court during the pendency of an appeal. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 509 (4th Cir. 2015) *citing to Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (observing that an appellate court may take judicial notice of the same materials as could a district court).

Moreover, per the plain language, this Court may take judicial notice of a fact per Fed. R. Evid. 201(b)(2) "that is not subject to reasonable dispute" when that fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

A.      **Appellants Seek Judicial Notice Of Government Financial Records Obtained From Publicly Available Government Websites Of and About That Governmental Body, And Their Accuracy Cannot Reasonably Be Questioned.**

Appellants seek judicial notice of publicly available government financial information, by and about those governmental bodies, obtained from those governmental bodies' websites. See Exhibit A – Hricik Declaration and SA 1-430.

This Court, and numerous others, routinely take judicial notice of information contained on state and federal government websites. *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (finding no error in lower court taking judicial notice of information on the USCIS [United States Citizenship and Immigration Service] website, stating "The USCIS website is a source whose accuracy cannot reasonably be questioned"). *Id.* See, also*, Hall v. Virginia*, 385

F.3d 421, 424 n.3 (4th Cir. 2004) (considering publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services.") *(citing Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

The Court may take judicial notice of the contents of a government agency's website. *See, e.g., Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of Texas sex offender agency's website); *Buhendwa v. Reg'l Transp. Dist.*, 82 F. Supp. 3d 1259, 1262 n.1 (D. Colo. 2015) (judicial notice of members of a State Board taken from government website). See also, *Bartolotti v. Maui Mem'l'l Med. Ctr.*, No. 14-00549 SOM/KSC, 2015 U.S. Dist. LEXIS 98121 (D. Haw. July 28, 2015) wherein Court took judicial notice of a public agency's records including the annual report of an agency submitted to the legislature.

The district court in *Garcia,* also cited to numerous similar decisions from across the country taking judicial notice of information on government websites:

> As the government notes, district courts routinely exercise their discretion in taking judicial notice of information available on federal and state government websites. See, e.g., *Hansen Beverage Co. v. Innovation Ventures, LLC,* No. 08-CV-1166-IEG POR, 2009 U.S. Dist. LEXIS 127605, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("Information on government agency websites has often been treated as properly subject to judicial notice.") (quoting *Paralyzed Veterans of Am. v. McPherson*, 2008 U.S. Dist. LEXIS 69542, at *5 (N.D.Cal. Sept. 8, 2008)); *United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (W.D.Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet.");

*Cali v. E. Coast Aviation Servs., Ltd*., 178 F. Supp. 2d 276, 287, n. 6
(E.D.N.Y. 2001) (taking judicial notice of the information contained on
websites and database pages from the Pennsylvania Department of State and
the Federal Aviation Administration); *In re Amgen Inc. Sec. Litig*., 544
F.Supp.2d 1009, 1023-24 (C.D.Cal. 2008) (taking judicial notice of drug
labels taken from the FDA's website); *County of Santa Clara v. Astra USA,
Inc*., 401 F.Supp.2d 1022, 1024 (N.D.Cal. 2005) (taking judicial [*5] notice
of information posted on a Department of Health and Human Services
website).

*United States v. Garcia*, No. 3:15-cr-00040-MOC-DSC, 2015 U.S. Dist. LEXIS

156626, at *3-5 (W.D.N.C. Nov. 18, 2015).

> **B.**     **The Facts, Financial Documents, and Information Sought To Be
> The Subject Of Judicial Notice About Charleston County and the
> Insurance Reserve Fund Were All Obtained From Their Publicly
> Available Government Websites and Their Accuracy Cannot
> Reasonably Be Questioned.**

In Exhibit A - the Hricik Declaration, the facts and documents listed, SA 1-

380, were all obtained from the following government websites:

- Charleston County: www.CharlestonCounty.org

- The South Carolina State Auditor's Office: www.osa.sc.gov

- The Insurance Reserve Fund: www.irf.sc.gov

- The State Fiscal Accountability Authority
  - Division of Procurement Services: www.procurement.sc.gov

The documents obtained and referenced in Facts #1 - #8 include the audited

and certified Financial Reports of both the County of Charleston and the Insurance

Reserve Fund, along with related financial documents.  See Exhibit A – Hricik

Declaration and SA 1-380.

No one can reasonably question the veracity, authenticity, or accuracy of any of the referenced facts and/or documents obtained from these official government sites, about and related to Charleston County and the Insurance Reserve Fund.

The Court may click on any of the hyperlinks set forth in Exhibit A to identify the source of the information and see the documents for themselves.

**C.      Many of the Facts, Financial Documents, and Information Sought To Be The Subject Of Judicial Notice Were Also Plead In Appellant's Amended Complaint and Appellee's Answer Stated These Were "Legal Conclusions."**

In the Amended Complaint, Appellants anticipated the Eleventh Amendment immunity defense of Appellee. As such, Appellants plead in great detail, numerous very specific facts related thereto, including as to the:

(1) Finances, Funding, & Structure of Charleston County and Appellee;

(2) The Insurance Reserve Fund – No State of South Carolina Funds At Risk

(3) The County Automobile Insurer American Southern (and IRF's Use of Reinsurance); and

(4) The County Tort Policy Purchased From the IRF – No State Funds At Risk.

*See* Amended Complaint. ECF No. 29 pp. 39-45, ¶¶165-203.

Appellants' Amended Complaint also attached as Exhibits and incorporated many documents by reference, including excerpts and hyperlinks to Charleston County financial reporting that are now some of the very same facts, information,

and documents that are before this Court by way of this Motion and are already part of the record. ECF No. 29-4 to 29-6; See also, Fed. R. Civ. P. 10(c); *Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record. . . .").

Appellee, in its Answer to the Amended Complaint did not dispute any of these allegations as disputed facts, but instead, answered as to every one:

"<u>The allegations contained in paragraphs ¶¶165 - 203 state conclusions of law to which no response is required.</u>" ECF No. 41 p.9 Answer of CCSO. (emphasis added).

Thus, for purposes of this litigation, Appellee did not (and could not) deny the plain truth of these allegations, but rather answered that these allegations raise only legal issues that are appropriate for judicial resolution.

**D.      The Facts and Documents That Are The Subject of Judicial Notice Are In Accord With The Codified Law of South Carolina That Require Only the Insureds, (And Not the State of South Carolina), To Pay The Premiums on Policies Purchased From The IRF.**

As discussed, *supra*, from the record before the *Cromer* court, that court could not determine if the State of South Carolina treasury paid any portion of the premiums paid by Greenville County to the IRF to insure the Greenville County Sheriff's Office. *Cromer, supra,* at 1332.

The *Cromer* court was obviously concerned about "who paid the premiums" and even cited to *Bockes v. Fields*, 999 F.2d 788 (4th. Cir. 1993) wherein that Court found Eleventh Amendment immunity because the Commonwealth of Virginia paid 80% of the insurance premiums on behalf an entity. *Id.* at 1332.

Not made known to the *Cromer* court, The State of South Carolina could not, and did not, pay any percentage of Greenville's, or anyone else's premiums to the IRF **as South Carolina law expressly forbids the payment of premiums to the IRF by any entity other than from the entity seeking insurance from the IRF**: (emphasis added)

- S.C. Code Ann. §1-11-140(A): *Authorization of Fiscal Accountability Authority, through the Office of Insurance Reserve Fund, to provide insurance:*

  Premiums for the insurance <u>must be paid from appropriations to or funds collected by the various entities,</u> except that in the case of the above-referenced students in which case the premiums must be paid from fees paid by students participating in these training programs.


- S.C. Code Ann. §15-78-140: *Procurement of insurance by political subdivisions; exclusivity of remedies provided in this chapter*

  (A) The political subdivisions of this State, in regard to tort and automobile liability, property, and casualty insurance shall procure insurance to cover these risks for which immunity has been waived by: (1) <u>the purchase of liability insurance pursuant to Section 1-11-140</u>; or (2) the purchase of liability insurance from a private carrier; or (3) self-insurance; or (4) establishing pooled self-insurance liability funds, by intergovernmental agreement, which may not be construed as transacting the business of insurance or otherwise subject to state laws regulating insurance

- S.C. Code Ann. §15-78-150: *Authority of State Fiscal Accountability Authority to purchase liability insurance; funding of purchase by participating governmental entities; premiums set according to risk; development of actuarial rating system plan.*

  (b) The purchase of insurance <u>must be funded by participating governmental entities by payment of premiums as required by the State Fiscal Accountability Authority</u>. (See, *supra,* S.C. Code Ann. §1-11-140(A))

(emphasis added).

These South Carolina Code Sections all support the facts and government documents and information that are the subject of this Motion For Judicial Notice – they establish the absence of State Treasury Risk <u>as a matter of both objective fact and law</u>. See, *supra, passim;* Exhibit A Hricik Declaration and SA 1-430.

## <u>CONCLUSION</u>

Appellants requests that their Motion For Judicial Notice be granted, and that the Court (1) take judicial notice of the numbered facts #1- #8 set forth *supra*; and (2) allow the referenced documents set forth and attached to the Exhibit A - Hricik Declaration (SA 1-480) be added as Supplemental Appendix to the Joint Appendix when filed.

### <u>Local Rule 27(a) Consultation</u>

Appellants sought the consent of Appellee to stipulate to these facts, documents and/or consent to this Motion. Appellee stated an intent to oppose for unstated reasons.

Respectfully submitted,

*/s/ Richard A. Hricik*

Richard A. Hricik
THE LAW OFFICES OF
RICHARD A. HRICIK, PA
941 Houston Northcutt Blvd.
Suite 204
Mt. Pleasant, SC 29464
Richard@CharlestonLawyer.com
P: (843) 849-0136

*Counsel for Appellant*
*Randall Williams, PR of the Estates*
*of Shanice & Miranda Williams*

## <u>**CERTIFICATION**</u>

Pursuant to Federal Rules of Appellate Procedure 27(d)(2), 32(a)(5), and 32(g)(1),

I certify that this Motion for Judicial Notice has 3,378 words and was prepared

using Times New Roman, 14-point font.

Respectfully Submitted,

*/s/ Richard A. Hricik*_____
Richard A. Hricik, Esq.
THE LAW OFFICES OF
RICHARD A. HRICIK, PA
941 Houston Northcutt Blvd. Ste. 204
Mt. Pleasant, SC 29464
Richard@CharlestonLawyer.com
P: (843) 849-0136

*Counsel for Appellant Randall*
*Williams, PR of the Estates of Shanice*
*and Miranda Williams*

## <u>CERTIFICATION OF FILING AND SERVICE</u>

I hereby certify that on this 1st day of May, 2024, I caused this Motion For

Judicial Notice And To Supplement Appendix to be filed electronically with the

Clerk of Court using the CM/ECF System, which will send notice of such filing to

all registered CM/ECF users.

*/s/ Richard A. Hricik*
*Counsel for Appellant Randall*
*Williams, PR of the Estates of*
*Shanice and Miranda Williams*